# Panorama*FLAT*

Agreement as of January 1, 2005

J. Duncan Urquhart
29 Hollow Road
Staatsburg, NY 12580

Dear Duncan:

**Re: Consulting Retainer Agreement**

On behalf of the Board of PanoramaFLAT Limited ("PFL" or the "Company"), I am pleased to set forth below the terms of the Consulting Retainer Agreement with you (the "Consultant" or "Urquhart") and the Company.

Please review the proposed terms and conditions as set forth herein and if they are acceptable to you, please sign and return a copy of this letter for the Company's files.

You agree with PFL to the following terms and conditions:

### Section 1 - Services to be Rendered

In conjunction with, and at the direction of, the Company's Board of Directors, Consultant will perform consulting services to assist the Company as follows:

1.1  Act as the Chief Financial Officer of the Company, reporting to the President and Chief Operating Officer;

1.2  Perform such reasonable duties as are typical of a CFO, including but not limited to identifying and implementing a financial reporting system, defining and obtaining approval of financial control procedures, preparing historical information and forward looking projections, maintaining corporate records and capitalization summaries, research existing models and develop a proposed licensing strategy, providing direction and assistance to the Company's independent auditors, and other reasonable duties as requested from time to time by the CEO, President, or Board of Directors.

1.3  Consultant shall devote 20 hours per week to the rendering of services hereunder which shall have priority over any other business activities undertaken by Consultant.

1.4  This Agreement is not intended to imply or create an employment relationship between the Company and the Consultant and the parties

Letter to Mr. J. Duncan Urquhart
Re: Consulting Agreement
Dated as of January 1, 2005
Page 2 of 7

hereto agree to enter into such additional agreements as may be required if such relationship is alleged.

### Section 2 - Term

2.1  The term of this Agreement shall commence on the date hereof and

except as otherwise provided in this Agreement with respect to earlier termination, shall continue in effect for one year ("Consulting Period").

2.2  The Company shall provide the Consultant with a minimum of six (6) months notice before the expiration of the Agreement if it does not plan on entering into discussions with the Consultant for a renewal thereof.

2.3  This Agreement shall renew for each successive Consulting Period unless earlier terminated as provided for herein, or unless one party gives the other party ninety (90) days written notice prior to the date of renewal of a Consulting Period that such party does not wish the Agreement to renew for another Consulting Period.

### Section 3 – Fees, Commissions and Stock Options

The Company shall pay, or cause to be paid, to the Consultant the following fees in US Dollars:

3.1  A fee of $7,500 per month, payable monthly in advance on the 1st of each month. Such monthly payments in this full amount will commence in January 2005.

3.2  The Company will not deduct income or remittance taxes from the fee as quoted in Section 3.1, and Consultant hereby acknowledges that he is responsible for payment of all taxes relating to this agreement in the country of his residence.

3.3  The Company agrees to negotiate in good faith with the Consultant to award stock options in an amount that is typical of companies of similar size and financing and in similar stages of development. These negotiations will commence as soon as possible once the Company has incorporated as a U.S. or off-shore based entity, but in any event, no later than March 1, 2005.

### Section 4 – Expenses

The Company shall reimburse Consultant or cause Consultant to be reimbursed for reasonable third party, out-of-pocket expenses (including business class travel if required) directly related to services performed hereunder. Such reimbursement shall occur within 15 days after Consultant has submitted to the Company third party invoices or other reasonably verifiable documentation of

Letter to Mr. J. Duncan Urquhart
Re: Consulting Agreement
Dated as of January 1, 2005
Page 3 of 7

such expenses, and Consultant agrees to submit same to the Company within 30 days after the expense has been incurred.

### Section 5 - Termination

5.1 Termination by Consultant

Consultant may terminate this Agreement upon thirty (30) days written notice to Company setting forth with specificity the grounds for termination upon the occurrence of any of the following:

5.1.1 a material adverse change in Consultant's status, position, or duties if such failure has not been cured within 30 days after written notice thereof has been given by Consultant to Company; or
5.1.2 the dissolution of Company; or
5.1.3 material irreconcilable differences; or
5.1.4 the Company is in breach of any material terms of this Agreement, if such breach has not been cured within 30 days after written notice thereof has been given by Consultant to Company.

In the event of a termination under this Section, Company shall pay Consultant the monthly fee for one (1) year under Section 3.1 from the date of termination, as well as any other compensation pro rated through the date of termination providing that the termination by the Consultant occurred after the first (1st) anniversary date hereof. This one year period shall not apply if the reason for termination is a result of the Company being in breach of Section 3.3.

5.2 Termination by Company For Cause

Company may terminate this Agreement for cause upon thirty (30) days prior written notice to Consultant. For purposes of this Section, "cause" shall mean any:

5.2.1 dissemination by Consultant of trade secrets or other material confidences of Company or other material violations of this Agreement by Consultant;
5.2.2 dishonesty of Consultant as punishable by criminal law;
5.2.3 deliberate activity of Consultant that is inconsistent with Consultant's duties hereunder or exceeds Consultant's authority and which is materially prejudicial to the interests of Company; or
5.2.4 any act, or failure to act, by Consultant involving fraud, willful malfeasance or gross negligence in the performance of his duties hereunder.

Letter to Mr. J. Duncan Urquhart
Re: Consulting Agreement
Dated as of January 1, 2005
Page 4 of 7

      In the event of termination under this Section 5.2, Company shall pay to Consultant the base fee under Section 3.1 through the date of termination and any other compensation pro-rated through the date of termination stated in the notice. Consultant shall, if so requested by the Company's Board of Directors, perform his duties under Article 1 of this Agreement until the date of termination stated in the notice.

5.3  Termination by Company Without Cause

In the event that Company has terminated Consultant's Agreement without cause, then this Agreement shall nonetheless be deemed terminated, except that Company shall pay Consultant the monthly fee as it becomes due under Section 3.1 for the greater of (i) the remaining term of this Agreement or (ii) six (6) months following the date of termination plus any bonus pro rated to termination date.

### Section 6 - Work Made For Hire

Consultant hereby agrees that all right, title and interest in and to the results and proceeds of Consultant's services hereunder and all other Proprietary Information (as defined below) is and shall be deemed to be owned from inception by the Company (or its designee) throughout the universe and in perpetuity as work made for hire. Without limiting the generality of the foregoing, Consultant agrees to assign and hereby assigns to the Company, throughout the universe and in perpetuity, any and all rights Consultant may have or acquire in such results and proceeds and other Proprietary Information, including but not limited to Consultant's right, title and interest in patents, inventors' certificates, copyrights, mask work rights, trade secret rights, trademark rights, and other intellectual property and rights throughout the world, and the Company shall be the sole owner thereof.

### Section 7 - Indemnities

7.1  The Company represents warrants and agrees that the results and proceeds of Consultant's services hereunder are and shall be original with Consultant and do not and will not infringe upon any right or interest of any person or entity.

7.2  Consultant agrees to indemnify and hold the Company, its officers, directors, employees, shareholders, agents and other representatives harmless from and against any and all losses, expenses, claims or proceedings arising out of Consultant's breach or alleged breach of this Agreement; provided that the Company shall not settle any such claim without Consultant's written consent not to be unreasonably withheld.

7.3  The Company agrees to indemnify Consultant from and against any and all losses, expenses, claims or proceedings, including shareholder actions relating to or arising out this engagement, unless such losses are the result of

Letter to Mr. J. Duncan Urquhart
Re: Consulting Agreement
Dated as of January 1, 2005
Page 5 of 7

negligence by Consultant or the result of Consultant's breach or alleged breach of this Agreement, provided that Consultant shall not settle any such claim without the Company's written consent not to be unreasonably withheld.

### Section 8 – Confidentiality

The term "Proprietary Information" means information that was or will be made, conceived, reduced to practice, developed, created, or discovered by or on behalf of the Company, or which became or will become known by or was or is conveyed to the Company in the course of its actual or anticipated business. Proprietary Information includes, but is not limited to, trade secrets, computer programs, data bases, designs, technology, ideas, know-how, processes, formulas, compositions, data, techniques, improvements, inventions and discoveries (whether patentable or not), works of authorship, audio-only and audiovisual recordings, and other works under the copyright laws, business and product development and marketing plans, customer information, vendor information, trademarks (including service marks) and trade names, information about operations and maintenance, financial information, information on the skills, abilities and experiences of its employees, other information concerning the Company's actual or anticipated business, research or development, and information that is received in confidence by Kehoe or by the Company from any other person or entity. Proprietary Information also shall without limitation include the results and proceeds of Consultant's services hereunder. Consultant agrees that it and its owner(s), officer(s) and employee(s) shall keep all Proprietary Information strictly confidential. Consultant understands that Proprietary Information is of significant value to the Company, and may be (a) of immediate commercial value, (b) of potential future value, (c) indicative of unproductive or unfeasible approaches and directions, and/or (d) may otherwise provide the Company useful knowledge or an advantage over its competitors. Without the Company's prior written consent, Consultant shall not distribute any Proprietary Information to any third party, and shall deliver all Proprietary Information to the Company promptly after the end of the term of this Agreement.

### Section 9 – Miscellaneous

9.1  This Agreement is intended by the parties hereto as a final expression of their understanding and agreement with respect to the subject matter hereof and as a complete and exclusive statement of the terms thereof; this Agreement supersedes all prior and contemporaneous negotiations, understandings, and agreements between the parties hereto with respect to the subject matter hereof. The parties acknowledge and agree that no party hereto has made any representations or promises in connection with this Agreement or the subject matter hereof not contained herein. Nothing in this Agreement shall be construed to require the commission of any act contrary to law, and wherever there is a conflict between any provisions of this

Letter to Mr. J. Duncan Urquhart
Re: Consulting Agreement
Dated as of January 1, 2005
Page 6 of 7

Agreement and any statute, law, ordinance, order or regulation contrary to which the parties hereto have no legal right to contract, such statute, law, ordinance, order or regulation shall prevail; provided that, in such event, (i) the provision of this Agreement so affected shall be limited only to the extent necessary to permit the compliance with the minimum legal requirements; (ii) no other provisions of this Agreement shall be affected thereby, and (iii) all

such other provisions shall remain in full force and effect. The parties hereto shall negotiate in good faith to replace any invalid, illegal or unenforceable provision (the "Invalid Provision") with a valid provision, the effect of which comes as close as possible to that of the Invalid Provision. This Agreement cannot be cancelled, modified, amended or waived, in part or in full, in any manner except by an instrument in writing signed by the party to be charged. No waiver by a party hereto, whether expressed or implied, of any provision of this Agreement or default hereunder shall affect such party's right to thereafter enforce such provision or to exercise the right or remedy set forth in this Agreement in the event of any other default, whether or not similar. The paragraph headings herein are used solely for convenience and shall not be used in the interpretation or construction of this Agreement.

9.2   This Agreement shall be deemed to have been entered into in the state of Western Australia and the validity, interpretation and legal affect of this Agreement shall be governed by the laws of the Western Australia applicable to contracts entered into and performed entirely within Western Australia. The courts located in Western Australia (state and federal), only, will have jurisdiction of any controversy regarding this Agreement; any action or other proceeding which involves such a controversy will be brought in those courts, in Western Australia and not elsewhere. Notwithstanding the immediately preceding sentence, the Company shall have the right to seek in any court or jurisdiction located anywhere in the world injunctive or other equitable relief to prevent or remedy any breach or threatened breach of this Agreement by Consultant.

### Section 10 - Notices

Any notice, request, demand or other communication in connection with this Agreement must be in writing and shall be deemed to have been given and received three (3) days after a certified or registered letter containing such notice, properly addressed, with postage prepaid, is deposited in the United States mail, and if given otherwise than by registered or certified mail, it shall not be deemed to have been given until actually delivered to and received by the party to whom it is addressed.

10.1   Notice to Company shall be given at its principal mailing address, which at the time of execution of this Agreement is P.O. Box 242, Clinton Corners, NY 12514, and Attention Managing Director.

Letter to Mr. J. Duncan Urquhart
Re: Consulting Agreement
Dated as of January 1, 2005
Page 7 of 7

10.2  Notice to Consultant shall be given at its principal mailing address which at the time of execution of this Agreement is 29 Hollow Road, Staatsburg, NY 12580.

Please confirm that the foregoing is in accordance with your understandings and agreement by signing and returning the duplicate of this letter enclosed herewith.

Yours sincerely,

Sutherland C. Ellwood, Jr.
Chief Executive Officer/Managing Director
Chief Technology Officer/Technical Director
Panorama FLAT Ltd.


For and on behalf of
PanoramaFLAT Limited
(The Company)

*[signature]*

Sutherland C. Ellwood, Jr.
Managing Director
Authorized Signatory

*[signature]*

Accepted and Agreed as of the
date first above written

J Duncan Urquhart